Todd JOHNSON, Plaintiff-Appellant,

v.

Mary Lou GRZADZIELEWSKI, William Rewey, James N. Knocke, Dean H. Tucker, H. Gaylord Greenhill, James Conner, Robert Washburn, William Riley, Dean Wolf, Earl Gutzmer, Rick Scruton, Jerry Gorby, Doug Prey, Wayne Pearson, James Bertling, Gerald Endrizzi, Walter Hicks, Northwestern Elevator Company, Hartford Accident & Indemnity Insurance Group, a foreign corporation, and G.A.L. Mechanical Services, a foreign corporation, Defendants-Respondents,

DOVER ELEVATOR, a foreign corporation, Liberty Mutual Insurance, a foreign corporation, Daverman Associates, Architects and Engineers, a foreign corporation, ABC Insurance Company and DEF Insurance Company, Defendants.

Court of Appeals

*No. 89-2355. Submitted on briefs October 8, 1990.—Decided November 14, 1990.*

(Also reported in 465 N.W.2d 503.)

601

603

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *John E. Feldbruegge* of *Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.* of Milwaukee.

On behalf of the defendants-respondents Mary Lou Grzadzielewski, William Rewey, James N. Knocke, Dean H. Tucker, H. Gaylord Greenhill, James Conner, Robert Washburn, William Riley, Dean Wolf, Earl Gutzmer, Rick Scruton, Jerry Gorby, Doug Prey, Wayne Pearson, James Bertling, Gerald Endrizzi and Walter Hicks, the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Theodore L. Priebe,* assistant attorney general.

On behalf of the defendants-respondents Northwestern Elevator Company and Hartford Accident & Indemnity Insurance Group, the cause was submitted on the brief of *Mark A. Grady* of *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.* of Milwaukee.

On behalf of the defendant-respondent G.A.L. Mechanical Services, the cause was submitted on the brief of *Steven W. Celba* and *Michael D. Stotler* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

Before Nettesheim, P.J., Brown and Anderson, JJ.

BROWN, J.   Todd Johnson was seriously injured when he tried to climb out of an elevator car that stopped between two floors while he and two friends were joy riding the elevator in a practice known as "expressing." Johnson appeals two summary judgments holding him more negligent than any of the defendants in his tort suit. He also appeals an order denying his motion for a default judgment against one of the defendants, G.A.L. Mechanical Services.

We conclude as a matter of law that Johnson was at least fifty-one percent negligent. Furthermore, because elevators are dangerous if used in the wrong way, we conclude that as a matter of public policy we cannot minimize the negligence of a person who deliberately thwarts safety mechanisms on an elevator, thereby

endangering the safety of all riders. Nor can we permit such a negligent plaintiff to subject defendants and the courts to the time and expense of a lawsuit where the plaintiff's negligence so obviously exceeds that of any defendant. Therefore, we affirm the summary judgments of the circuit court and the court's order denying Johnson's default motion.

Johnson's injury occurred about 2:00 a.m. on March 26, 1985 at the University of Wisconsin-Whitewater's Wells Dormitory where Johnson was a freshman resident. Johnson proposed to his roommate, Eric Koschnick, that they "express" ride an elevator while waiting for a pizza delivery. After they ate the pizza, Johnson again suggested an "express" ride. The second time, the two roommates invited another friend, Mike McWilliams, to join them. Koschnick and McWilliams had each drunk eight to ten beers at bars earlier in the evening.

To "express" an elevator, a person puts fingers between the inner doors as they close and then manually pushes and holds open the inner doors. Another person then pushes a lever that is located in the top and center of the open doorway. That causes the elevator to descend very quickly and without stopping at any floors. The elevator stops when the lever is released. The passengers exit the elevator by manually opening the outer elevator doors with a release lever on the inside of the outer doors.

When the three students "expressed" the elevator from the tenth to the second floor of the dormitory, the elevator stopped between the first and second floor. Johnson could not reach the outer door release lever on either the first or second floor outer doors. Rather than letting the inner doors close and then riding the elevator normally or buzzing for help, Johnson tried to climb up

through the space between the elevator car and the walls of the elevator shaft to reach the release lever that opened the second floor outer doors. Johnson apparently hit the top of the inner door and triggered the lever which started the elevator moving. Johnson became lodged in the space between the elevator car and the second floor landing sill and was seriously injured.

Johnson sued Northwestern Elevator Company, the seller, installer and maintainer of the elevator, and G.A.L. Mechanical Services, the designer, manufacturer, and seller of the doors and closure mechanism involved in the accident. He also sued various state employees at the university from maintenance people to the dorm resident assistants. He contended that the elevator was defective because it lacked a second safety device or, alternatively, the safety device it did have was improperly located, should have been obscured from view and should have been less accessible. The trial court issued two summary judgments in favor of the defendants and an order denying Johnson's default motion against G.A.L. Mechanical Services.

The summary judgment granted to all defendants, except Walter Hicks, concluded that there was no evidence of negligence or causation and public policy precluded recovery. The other summary judgment was granted to Hicks, a state maintenance employee who retired four years before this accident. The court concluded that Hicks had no duty to warn the university that a second safety switch could be installed on the elevator. Thus, he was entitled to governmental immunity since he breached no ministerial duty.

The court denied Johnson's motion for a default judgment against G.A.L. Mechanical Services because the court concluded that G.A.L. had a defense for failure to answer Johnson's complaint within twenty days since

607

G.A.L. was misnamed on the summons. The court also concluded that a default judgment in a million dollar tort suit would be "unconscionable." Johnson appeals from the two summary judgments and the order denying the default motion.

The court of appeals reviews decisions on summary judgment *de novo*. *Vultaggio v. General Motors Corp.*, 145 Wis. 2d 874, 881, 429 N.W.2d 93, 95 (Ct. App. 1988). The appeals court will reverse a summary judgment only if the record shows that material facts are in dispute or if the trial court incorrectly applied the law. *Garvey v. Buhler*, 146 Wis. 2d 281, 288, 430 N.W.2d 616, 619 (Ct. App. 1988). There is no dispute of facts relating to Johnson's contributory negligence in this case. From these facts, we conclude that Johnson was more negligent than any defendant. We conclude that the trial court correctly applied the law of negligence and the law of governmental immunity.

Where the evidence of the plaintiff's negligence is so clear and the quantum so great, and where it appears that the negligence of the plaintiff is as a matter of law equal to or greater than that of the defendant, it is not only within the power of the court but it is the duty of the court to so hold. *See Gross v. Denow*, 61 Wis. 2d 40, 49, 212 N.W.2d 2, 7 (1973). Johnson had a duty to exercise ordinary care for his own safety when using the dormitory elevator. "Expressing" an elevator is by no means an exercise of ordinary care. It is instead a dangerous and intentional misuse of an elevator, which can foreseeably lead to the grave injury that occurred in this case. Furthermore, Johnson not only "expressed" the elevator, but also climbed into the narrow space between the elevator car and the building's elevator shaft instead

of using several clearly available safe means of exit. Since Johnson failed to exercise ordinary care, both in "expressing" the elevator and in climbing out of it, he was at least fifty-one percent causally negligent, and is therefore barred from recovery as a matter of law. *See* sec. 895.045, Stats.

Johnson is further barred from recovery on public policy grounds. The application of public policy considerations is solely a function of the court and does not in all cases require a full factual resolution of the cause of action by trial before policy factors will be applied by the court. *Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 542, 247 N.W.2d 132, 140 (1976). Of the six public policy reasons that have been recognized in this state for denying recovery even when negligence has been proved, three are applicable to this case: (1) when the injury is too remote from the negligence; or (2) when the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) because allowance of recovery would enter a field that has no sensible or just stopping point. *Id.* at 541, 247 N.W.2d at 140.

The trial court correctly concluded that Johnson's injury was too remote from and too wholly out of proportion to any alleged negligence of the defendants. Johnson's arguments for the negligence of the defendants is that Northwestern had a continuing duty to warn the university that a second safety switch was available for the elevator, that G.A.L. had a continuing duty to advise the university about the switch or to offer the university the second safety switch without charge, and that the university had a duty to install the second safety switch.

Although a more sophisticated safety switch was available for the elevator involved in this accident, the record indicates that students at another university were

also able to defeat that safety switch and "express" the elevators. Thus, there is no proof that the more sophisticated switch would have prevented Johnson's injury. Furthermore, Northwestern did advise the university that the switch was available. We cannot conclude that the university had a clear and absolute obligation to purchase this switch since it was a discretionary decision whether the proposed safety benefits of the switch outweighed its costs. Nor can we conclude that G.A.L. had an obligation to install the safety switch free of charge. If we imposed such an obligation, it would deter manufacturers from developing new safety features for their products. Thus, we find no negligence on the part of·the defendants, and any negligence related to this switch is minor and remote compared to Johnson's intentional disregard for his own safety.

Additionally, if we allowed this particular case to proceed, we would be entering a field that has no sensible or just stopping point. We would be sanctioning claims where an injured party intentionally engaged in the misuse of a product just to seek a thrill. Johnson was an eighteen-year-old adult at the time of the accident. He must be held to know that elevators could be dangerous if used in the wrong way. This court cannot allow the claim under circumstances in which an injured party was the major cause of his own injuries.

We also affirm the court's summary judgment for Hicks holding that Hicks had no ministerial duty to inform the university about the second safety. switch. Hicks was a state employee who had governmental immunity when performing a discretionary act. *See Lister v. Board of Regents*, 72 Wis. 2d 282, 301, 240 N.W.2d 610, 622 (1976). Hicks was supervisor of the maintenance department for dormitories at the univer-

sity. Northwestern claims that it informed him about the availability of the second safety switch. Hicks had no authority to make purchases such as the second safety switch, but he also had no duty to pass on to his supervisors the information about every product offered by outside vendors, even when those products purported to be safety products. As the university's first contact point for outside vendors at the dormitory, he had the discretion to decide which products he would recommend for purchase. Hicks does not remember being informed about the second safety switch. However, even if he remembered, we cannot conclude that he had an obligation to recommend the switch to his supervisors. A discretionary determination is protected from liability even if mistaken. *Harmann v. Schulke*, 146 Wis. 2d 848, 861, 432 N.W.2d 671, 677 (Ct. App. 1988).

Alternatively, we hold that Johnson is more negligent than Hicks as a matter of law for the same reasons as we gave for the other defendants. Likewise, public policy serves to prohibit Johnson from continuing suit against Hicks.

Regarding the order denying default judgment against G.A.L., the standard of review is whether the denial was within the discretion of the trial court. *See Oostburg State Bank v. United Sav. & Loan Ass'n*, 130 Wis. 2d 4, 11, 386 N.W.2d 53, 57 (1986). An appellate court will not reverse a discretionary decision unless the trial court has abused its discretion. *Id.* The court will find an abuse of discretion only if the trial court did not exercise discretion, if the decision is not supported by the facts, or if the trial court used the wrong legal standard. *Id.* at 11–12, 386 N.W.2d at 57. We conclude that

the trial court did not abuse its discretion in denying the default motion against G.A.L.

In a default motion, the complainant must show that the complaint was timely served and filed and that the complaint contains allegations sufficient in law to state a claim for relief against the defendant. *Davis v. City of Elkhorn,* 132 Wis. 2d 394, 398–99, 393 N.W.2d 95, 97 (Ct. App. 1986). In the present case, there can be no default judgment against G.A.L. since we conclude that Johnson was at least fifty-one percent negligent as a matter of law. There is no claim against G.A.L. sufficient as a matter of law. Even if a party is in default, there is no right to judgment upon a claim not recognized by law. *Id.* at 399, 393 N.W.2d at 97.

For all of the foregoing reasons, we affirm the summary judgments of the circuit court and the order denying the motion for default judgment against G.A.L.

*By the Court.*—Judgments and order affirmed.